UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

DEREK PURPURA,

                                      Plaintiff,         Case # 19-cv-01717

v.                                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
───────────────────────────────────────

## INTRODUCTION

On April 4, 2014, Plaintiff Derek Purpura protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and for Supplemental Security Income under Title XVI of the Act. Tr.[1] 159. The Social Security Administration ("SSA") denied his claim and Plaintiff appeared at one hearing before Administrative Law Judge Rosanne Dummer. Tr. 34-67. Plaintiff and a vocational expert testified. On October 7, 2016, ALJ Dummer issued an unfavorable decision. Tr. 18-33. The Appeals Council denied Plaintiff's request for review, making ALJ Dummer's decision the final decision of the SSA. Tr. 1-6. Plaintiff appealed to this Court.

On February 22, 2018, this Court remanded the case pursuant to a stipulation between the parties. Tr. 1011. The Appeals Council then issued an order directing the ALJ upon remand to (i) "give further consideration to the medical opinion evidence pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain," (ii) "evaluate the claimant's medical impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a," (iii) "give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record," and (iv) if warranted, "obtain

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." Tr. 1015-1016. Administrative Law Judge William Weir (the "ALJ") held a second hearing and issued an unfavorable decision on August 30, 2019. Tr. 956-972. Plaintiff again appealed to this Court.[2]

## LEGAL STANDARD

### I.     District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.    Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4)

---

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity since the alleged onset date. Tr. 959. At step two, the ALJ found that Plaintiff has the following severe impairments: posttraumatic stress disorder, generalized anxiety disorder, and depressive symptoms. Tr. 959-60. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 960-62. The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but that he can only perform simple tasks. He would be further limited by the inability to perform any complex work and could tolerate only up to one change per day in tasks or settings. The ALJ also determined that Plaintiff can have no public contact, only incidental co-worker contact, and occasional supervisory contact. Tr. 962.

In formulating the RFC, the ALJ gave "greater weight" to the opinion of the consultative medical evaluator, Dr. Elizabeth Kalb, because he found her to be "an unbiased health medical expert who has a thorough understanding of Social Security disability," and her opinions were "consistent with the overall record, well-reasoned and supported by appropriate findings." Tr. 970. The ALJ gave "little to no weight" to Plaintiff's treating physician, Dr. Mark Varallo, because

3

he determined the "opinion is inconsistent with the overall record and . . . limitations were based on the claimant's self-reports." Tr. 968.

At steps four and five, the ALJ concluded that considering the Plaintiff's age, education, work experience and RFC, there were jobs within the national economy that Plaintiff could perform. Thus, the ALJ concluded Plaintiff was not disabled.

**II.      Analysis**

Plaintiff takes issue with the ALJ's treatment of the medical opinion evidence. He argues that the ALJ did not comply with the Appeals Council's remand instructions by (1) failing to adequately explain how the RFC was consistent with Dr. Kalb's opinion and (2) failing to properly weigh the opinion of Dr. Varallo, Plaintiff's treating physician. *See* ECF No. 9-1 at 18-26. Because the Court agrees that remand is required under Plaintiff's first argument, it will not address Plaintiff's other argument.

An ALJ is required to "take any action that is ordered by the Appeals Council." 20 C.F.R. §§ 404.977(b), 416.1477(b). Accordingly, an "ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand." *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) (citations omitted). The Appeals Council previously remanded ALJ Dummer's decision in this matter for further consideration on the basis that the decision, *inter alia*, did not explain how the RFC finding adequately incorporated Plaintiff's need for a low stress environment and did not explain how the RFC incorporated Plaintiff's need to work around others given he was limited to brief and superficial contact with others. Tr. 1014. On remand, the ALJ again failed to address these concerns.

It is well established that stress is highly individualized and therefore requires an ALJ to make "specific findings about the nature of [Plaintiff's] stress, the circumstances that trigger it,

and how those factors affect [his] ability to work." *Dukes v. Comm'r of Soc. Sec.*, No. 18-cv-6438, 2019 WL 6251191, at *8 (W.D.N.Y. Nov. 22, 2019)  (quoting *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006)); *see also Smith v. Astrue*, No. 9-cv-470, 2011 WL 6739509, at *7 (N.D.N.Y. Nov. 4, 2011) ("The ALJ did not make sufficient finds concerning Plaintiff's particularized ability to deal with stress, other than to generically conclude that she was limited to 'low stress' work."); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 2006) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments.").  As such, an ALJ must "specifically inquire and analyze [an individual's] ability to manage stress." *Booker v. Colvin*, 14-cv-407s, 2015 WL 4603958, at *3 (W.D.N.Y. July 30, 2015) (citing *Haymond v. Colvin*, No. 1:11-cv-0631, 2014 WL 20148172, at *8-9 (W.D.N.Y. May 19, 2014)).

Throughout the decision, the ALJ cited several records which suggest some of Plaintiff's stress triggers include finances, his child, and his girlfriend's mental health. Tr. 965.  The ALJ also noted Plaintiff's stress increased when his daughter was yelling and screaming, he had feelings of inadequacy as a father and partner, and was worried he could not provide for his family.  Tr. 966.  When Plaintiff's stress was increased, he testified he would typically have a panic attack or flashback and would require time away to regain his composure.  *See, e.g.*, Tr. 989 (Plaintiff testifying that if he could tell a panic attack was coming on he would remove himself from the situation, try to distract himself, and/or take his medication); Tr. 999 (Plaintiff testifying that if his daughter did something to induce panic, he would need his mother to watch his daughter "while [he] regained [his] composure").  The record also demonstrates most of Plaintiff's anxiety stems from his everyday fears, especially surrounding something happening to his daughter or other family members.  Tr. 987-88.  Plaintiff also testified that while he can have stress related problems

by being around people, he also has significant problems being alone, and finds that time alone often causes intrusive thoughts triggering his PTSD and depression. Tr. 991. In fact, Plaintiff stated part of the reason for his difficulty driving is because the time he spends alone in the car triggers depressive thoughts, including self-harm. Tr. 991-92.

The extent of the ALJ's inquiry into Plaintiff's ability to manage and cope with stress involved Plaintiff's ability to watch and care for his daughter, but nowhere did the ALJ address this in his decision. Nor did the ALJ explain how Plaintiff's individual stress is triggered or how mechanisms of coping would allow him to perform a full range of work, limited only to simple one to two step tasks, no complex work, up to one change per day, and no public contact. *See* Tr. 962. Though it is true that the ALJ need not explicitly reference a stress limitation for an RFC determination to adequately account for a plaintiff's stress-related limitations, the RFC must still clearly account for the individualized stress in reaching its conclusion. *See, e.g.*, *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447-48 (W.D.N.Y. 2019) (remanding an ALJ's decision where the RFC contained social limitations but did not account for other stress triggers); *but see Cosme v. Colvin*, No. 15-cv-6121P, 2016 WL 4154280, at *13 (W.D.N.Y. Aug. 5, 2016) (the RFC's limitations of no contact with the public or coworkers adequately accounted for the plaintiff's stressors). It is unclear how Plaintiff's stress triggers and the impact on his ability to work were incorporated into the RFC determination here.

The Commissioner relies strictly on the fact that consultative evaluator Dr. Kalb's opinion provides that Plaintiff can carry out simple and complex instructions and perform low-stress work to justify the ALJ's RFC determination that Plaintiff can complete simple tasks. But even the Commissioner cannot point to any evidence in the record to suggest that the Plaintiff's specific stress triggers including his family, his past abuse, or feelings of inadequacy, will be ameliorated

by performing simple tasks in the workplace.  Rather, it seems the finding here was based on the generic conclusion that routine, simple tasks, *may* limit stress.  *See, e.g.*, *Herb*, 366 F. Supp. 3d at 447 ("[A]n RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, *may account* for the plaintiff's stress-related limitations." (emphasis added)) (citations omitted); *Figgins v. Berryhill*, No. 15-cv-6748, 2017 WL 1184341, at *10 (W.D.N.Y. Mar. 29, 2017) (limiting plaintiff to routine repetitive tasks implicitly addressed plaintiff's stress levels).  While it is true that often limiting an individual who suffers from stress-related limitations to simple tasks will reduce stress levels, there is no finding here to adequately address how this type of work is tailored to ameliorate Plaintiff's particular stress or its triggers.  As Dr. Kalb points out, Plaintiff was hospitalized numerous times during the relevant time period as a result of various stress triggers.  Tr. 949.  Yet, there is no indication by the ALJ how the RFC determination limiting Plaintiff to simple tasks in the workplace will address those particular stressors.

Moreover, the RFC does not contain any indication of how Plaintiff's mechanisms for dealing with stress will be tolerated in the workplace.  At the hearing, the ALJ asked the vocational expert the amount of off-task time tolerated by employers in the types of simple positions which the ALJ suggests Plaintiff can do.  Tr. 1009.  The vocational expert advised that the maximum amount of off-task time is about nine minutes per hour, or 15% of the workday, at most.  *Id.*  When the ALJ then asked Plaintiff how long he needed to "walk away" in certain situations with his supervisor in past positions, presumably, to prevent the onset of a panic attack, Plaintiff replied about five minutes, but could not quantify the average number of times a day he would need to walk away.  Tr. 1009-10.  Additionally, earlier in the hearing, Plaintiff testified that when he is having a panic attack, or a "bad day," it could take anywhere from an hour or two, *see* Tr. 999, to

7

ten hours, for the panic attack to cease. Tr. 988. Dr. Kalb also recognized that Plaintiff's employer described him as having frequent work absences and having to go to the hospital due to panic attacks. Tr. 949. The ALJ did not ask the vocational expert whether jobs Plaintiff could complete would allow for these types of coping mechanisms or absences. *See also* Tr. 988 (Plaintiff testified to having at least two or three major panic attacks a month, three to five minor panic attacks a week in the spring, and two to three minor panic attacks a week in other seasons).

Finally, the ALJ failed to explain how the RFC incorporates Dr. Kalb's opinion that Plaintiff needs to work around others, *see* Tr. 948—which the ALJ credited—given that the ALJ also limited Plaintiff to brief and superficial contact with others. Indeed, Plaintiff's own testimony showed that when he was "bored," or alone, he would often slip into depressed states or begin having intrusive thoughts, which would then trigger his panic attacks, PTSD, anxiety, or depression. *See* Tr. 991. While the ALJ states the decision was consistent with Dr. Kalb's medical questionnaire and seems to acknowledge a consideration of Plaintiff's testimony in reaching the ultimate decision, the ALJ fails to square the evidence of the record with the RFC finding that only incidental and occasional contact with co-workers and supervisors was appropriate. The Commissioner is also unable to point to any evidence in the record or statement by the ALJ to explain how Dr. Kalb's opinion or Plaintiff's testimony regarding his need for social interactions was incorporated into the RFC. Rather, the Commissioner simply states that the ALJ's finding here acknowledges Plaintiff's need for contact in an amount which would not lead to stress and finds any public contact or significant co-worker contact was too unpredictable for Plaintiff. While it is possible the evidence available may have supported such conclusions, the rationale provided by the Commissioner was not discussed or even mentioned by the ALJ. The ALJ's opinion does not contain any explanation as to the connection between Plaintiff's need to work around others

and the RFC determination. Any attempt by the Commissioner to do so now is an unacceptable *post hoc* rationalization. *See White v. Saul*, 414 F. Supp. 3d 377, 385 (W.D.N.Y. 2019).

The ALJ's failure to properly evaluate Plaintiff's individualized stress triggers and coping mechanisms in determining the RFC was not harmless error. The ALJ was given specific instructions by the Appeals Council on remand to explain "how the residual functional capacity incorporates the claimant's need for low stress environment," and to explain "how the residual functional capacity incorporates the claimant's need to work around others, given that the claimant was limited to only brief and superficial contact with others." Tr. 1014. Had the ALJ made an individualized inquiry and analysis as to the effects of stress on Plaintiff, the ALJ could have tailored his findings to the specific facts present here and adequately explained the conclusions as requested by the Appeals Council. Because the ALJ did not do so, it is unclear whether the RFC adequately incorporates the Plaintiff's specific stress-related circumstances. In fact, while consulting the vocational expert during the hearing, the ALJ did not even inquire whether such stressors would occur at various jobs, nor did the ALJ inquire whether such jobs would allow for the likely absences Plaintiff would have at various times. Based on the reasons discussed above, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 10, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 16, 2020
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief Judge
                                        United States District Court

10